UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

**vs.**                           **Case No. 6:07-cr-0001-Orl-19KRS**

**TROY NOLAN HARKNESS,**

        **Defendant.**

_____

## ORDER

This case comes before the Court on the following:

1.     Motion to Dismiss Count Two of the Indictment filed by Defendant Troy Nolan Harkness on February 23, 2007; (Doc. No. 23); and

2.     Response to Defendant's Motion to Dismiss Count Two of the Indictment filed by the United States of America on March 9, 2007. (Doc. No. 40).

### Background

The Defendant in the instant case, Troy Nolan Harkness, was charged in a two-count Indictment filed on January 3, 2007. (Doc. No. 5). Count One charges Defendant with violating Title 18, United States Code, Sections 922(g)(1), 924(a)(2) and 924(e)(1). Count Two charges Defendant with possession of body armor after having been previously convicted of a felony crime of violence in violation of Title 18, United States Code, Sections 931(a)(1) and 924(a)(7). (*Id.*) Defendant's motion contends that the second Count of the Indictment is unconstitutional on its face and as applied to him.

-1-

**The Facts**

On October 2, 2006, four Orlando, Florida police officers had an encounter with Defendant who was employed as a security guard at the Home Suite Home Motel on East Colonial Drive in Orlando.  (Doc. No. 1, pp. 3-4).  During the encounter, the officers allegedly discovered that Defendant was wearing on his person, *inter alia*, a electronic stun device, (a "taser"), and a bullet proof vest.  (*Id*. at p. 4).  After allegedly finding other items in Defendant's possession and in his automobile, the officers took Defendant into custody.

In November of 2006, the United States Bureau of Alcohol, Tobacco, and Firearms ("ATF") was assigned to investigate Defendant's case.  ATF Special Agent Jason M. White subsequently discovered that Defendant was convicted in the State of Florida of at least four prior felony convictions for robbery, aggravated battery, leaving the scene of an accident with injury, and obtaining a controlled substance by forgery.  (*Id*. at p. 5).  Special Agent White also determined that Defendant's civil rights had not been restored following his convictions on the above felony offenses.[1]  (*Id.* at p. 6).  Thus, Defendant was subsequently charged with, *inter alia*, being a convicted felon in possession of body armor.

The parties have presented the following evidence regarding the bullet proof vest in question, which is not in dispute.  The vest was manufactured in January of 1993 by American Body Armor Equipment, Inc. and states that it is model number IIA-FS-R, lot number 796, serial number 931322-A.  (*E.g., id.* at p. 4).  The vest contains nylon panels placed over panels of a synthetic fiber called Kevlar.  (*E.g.* Doc. No. 40-2, p. 2).  After its

---

[1]     Defendant does not contest in the instant motion that at least one of these crimes constitutes a "crime of violence" under federal law.

creation in January of 1993 in the factory in Jacksonville, Florida, the vest was sold to a commercial distributor named Red the Uniform Tailor, Inc. located in the State of New Jersey. (Doc. No. 23-2, p. 1; Doc. No. 40-2, p. 3). Because of the age of the vest, the manufacturer was unable to trace the subsequent purchase history of vest. (Doc. No. 23-2, p. 1).

Gary Owensby, the Vice President of Domestic Sales for Armor Holding Products Group, a company related to American Body Armor Equipment, spoke with Special Agent Timothy S. Gunning regarding the product line of the vest in question. Mr. Owensby confirmed that the vest was made in Jacksonville, Florida and that such vests are offered for sale world wide. (*Id*. at p. 2). Furthermore, Special Agent Gunning stated that American Body Armor vests are available for sale over the internet. (*Id*.)

As the instant motion deals solely with Count II of the indictment, the Court will omit discussion of the remaining factual allegations against Defendant Harkness.

### Standard of Review

A motion for the dismissal of a count in an indictment may be brought at any time pursuant to Rule 12(b)(2), Federal Rules of Criminal Procedure. In reviewing the sufficiency of an indictment, or of any of its counts, the court must determine whether the indictment sufficiently sets forth the elements of the offenses alleged, whether it places the Defendant on fair notice of the charges against him, and whether it enables the Defendant to assert an acquittal or conviction so as to invoke his privilege against double jeopardy for a single offense. *Hamling v. United States*, 418 U.S. 87, 117 (1974); *United States v. Morris*, 18 F.3d 562 (8th Cir. 1994); *United States v. Staggs*, 881 F.2d 1527, 1530 (10th Cir.

1989), cert. denied, 493 U.S. 1020 (1990).

In determining whether an indictment has sufficiently set forth the elements of the offense charged, the indictment will generally be deemed sufficient "unless no reasonable construction can be said to charge the offense." *United States v. Peterson*, 867 F.2d 1110, 1114 (8th Cir. 1989).  In making this assessment, a Court must accept the allegations of the indictment as true.  *E.g.*, *United States v. Cadillac Overall Supply Co.*, 568 F.2d 1078, 1082 (5th Cir. 1978), cert. denied, 437 U.S. 903 (1978).[2]  Although the Court's assessment is generally limited to the "four corners" of the indictment, it is permissible and even desirable in certain circumstances for the Court to examine the factual predicate of an indictment, particularly where material facts are undisputed, in order for the Court to ascertain whether the elements of the criminal charge can be shown.  *E.g., United States v. Hall,* 20 F.3d 1084, 1087 (10th Cir. 1994); *United States v. Brown*, 925 F.2d 1301 (10th Cir. 1991).  However, a Court may not dismiss a properly charged indictment before trial for insufficient evidence. *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992) (per curiam)

## Analysis

### A.  Sufficiency of the Evidence

Defendant argues that the Government's evidence is insufficient to show that the vest moved in interstate commerce.  This argument is not well taken.  At this stage of the proceedings, binding Eleventh Circuit precedent does not allow the Court to dismiss a count

---

[2]     In *Bonner v. City of Prichard*, 661 F.2d 1206, (en banc), the United States Court of Appeals for the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

in an indictment for insufficient evidence. "There is no summary judgment procedure in criminal cases. Nor do the rules provide for a pre-trial determination of sufficiency of the evidence ... [t]he sufficiency of a criminal indictment is determined from its face. The indictment is sufficient if it charges in the language of the statute." *United States v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004) (per curiam) (quoting *United States v. Critzer,* 951 F.2d 306, 307 (11th Cir. 1992)); *see also United States v. Kitsch*, 307 F.Supp.2d 657, 661 (E.D. Pa. 2004) ("To resolve Kitsch's motion today, we need not decide what the Government will have to prove at trial to establish that body armor was 'sold or offered for sale, in interstate or foreign commerce.' ").

## B. Timeliness

The United States contends that Defendant's motion must be denied as untimely. Although the United States is correct that Defendant's motion was filed beyond the filing deadline, the Court will not deny the instant motion on timeliness grounds.

The Court's Criminal Scheduling Order set a deadline for the filing of motion for February 6, 2007. (Doc. No. 13). The instant motion was filed on February 23, 2007, twelve (12) business days after the deadline. Although such motion was several days beyond the Court's deadline, the United States offers no basis to determine that it was prejudiced by the late filing. Furthermore, the Government acknowledges that Defendant has had to change representation several times during the course of the instant litigation. Thus, in the interests of justice, the Court will not deny the instant motion on timeliness grounds.[3]

---

[3]     This Order in no way excuses Defendant from complying with such filing deadlines in the future, and counsel for Defendant is directed to comply with the Court's deadlines for the remainder of the case.

### C.  Constitutionality of 931(a)(1)

Defendant contends that Count II of the Indictment must be dismissed on the grounds that it violates the Commerce Clause of the United States Constitution facially and as applied.  For the reasons that follow, the Court finds that Count II of the Indictment should not be dismissed.

The Commerce Clause of the United States Constitution gives Congress the authority "[t]o regulate Commerce ... among the several States...."  U.S. Const., Art. I, § 8, cl. 3.  The United States Supreme Court has identified three broad categories of activity that Congress may regulate under its commerce power.  First, Congress may regulate the use of the channels of interstate commerce.  *E.g.*, *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 256 (1964) ("[T]he authority of Congress to keep the channels of interstate commerce free from immoral and injurious uses has been frequently sustained, and is no longer open to question." (quoting *Caminetti v. United States*, 242 U.S. 470, 491,(1917)).  Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities.  *E.g., United States v. Lopez*, 514 U.S. 549, 558 (1995); *Shreveport Rate Cases*, 234 U.S. 342 (1914); *Southern R. Co. v. United States*, 222 U.S. 20 (1911).  Finally, the commerce authority of Congress includes the power to regulate those activities having a substantial relation to interstate commerce, such as those activities that substantially affect interstate commerce.  *Lopez*, 514 U.S. at 558-59.

In the case of *United States v. Lopez*, the Supreme Court declared unconstitutional the Gun-Free School Zones Act of 1990 ("GFSZA") which made it illegal "for any individual

knowingly to possess a firearm at a place that the individual knows, or has reasonable cause to believe, is a school zone." *Lopez*, 514 U.S. at 551 (quoting 18 U.S.C. § 922(q)(1)(A) (1998)).  Because possessing a gun in a school zone did not fall into any of the three enumerated categories, the Court concluded that Congress lacked the constitutional authority to enact the GFSZA.  In striking the law, the Court emphasized that the GFSZA "contain[ed] no jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in question affect[ed] interstate commerce." *Id.* at 561.

Likewise, in *United States v. Morrison,* the Supreme Court found unconstitutional the Violence Against Women Act of 1994 ("VAWA") which created a private cause of action against those who commit a gender-motivated crime of violence. *Morrison*, 529 U.S. 598 (2000).  In so doing, the Court concluded that Congress could not regulate non-economic, violent criminal conduct based solely on that conduct's aggregate affect on interstate commerce. *Id.* at 617.  In addition, the Court noted that while the GFSZA and VAWA were missing a jurisdictional element, a statute with "a jurisdictional element may establish that [the statute] is in pursuance of Congress' regulation of interstate commerce." *Id.* at 612.

Title 18, United States Code, Section 931(a)(1) makes it unlawful for a person convicted of a prior "crime of violence" felony to purchase, own, or possess body armor.  18 U.S.C. § 931(a)(1).  Title 18, United States Code, Section 921(a)(35), provides that "the term 'body armor' means any product sold or offered for sale, in interstate or foreign commerce, as personal protective body covering intended to protect against gunfire regardless of whether the product is to be worn alone or is sold as a complement to another product or garment." Thus, unlike the statutes found unconstitutional in *Lopez* and *Morrison*, Section 931(a)(1)

contains a jurisdictional element.   18 U.S.C. §§ 921(a)(35), 931(a)(1); *United States v. Marler*, 402 F.Supp.2d 852, 854 (N.D. Ohio 2005).

The Eleventh Circuit has noted that the *Lopez* opinion counsels that the statutes most likely to be deemed within the commerce power of Congress are those directly regulating economic activity or containing explicit jurisdictional elements to ensure that they "tether the legislation" to interstate commerce. *United States v. Peters*, 403 F.3d 1263, 1272 (11th Cir. 2005); *see also United States v. Olin Corp.,* 107 F.3d 1506, 1509 (11th Cir. 1997); *United States v. Kitsch*, 307 F.Supp.2d 657, 661 (E.D. Pa. 2004).   Other courts have also noted the importance of a jurisdictional element in the commerce clause analysis.   "Indeed, we are aware of no recent case where the Court has sustained a facial challenge to a law containing a jurisdictional element, and we would be surprised to learn that a court could strike down an act of Congress that carefully limited its reach to activities within that body's commerce power." *Kitsch,* 307 F.Supp.2d at 661; *see also Marler*, 402 F.Supp.2d at 855 (discussing the importance of a jurisdictional element in Section 931(a)(1)).

Of the three federal Courts which have addressed the constitutionality of Section 931(a)(1), all have held that the statute is constitutional and lawfully regulates the possession of body armor by certain felons. *United States v. Patton*, 451 F.3d 615 (10th Cir. 2006), cert. denied, 2007 WL 506139 (U.S. Feb. 20, 2007); *Marler*, 402 F.Supp.2d at 852; *Kitsch,* 307 F.Supp.2d at 557.   Furthermore, several circuit courts have upheld as constitutional the analogous law of prohibiting the possession of a gun by a convicted felon.[4]  *E.g., United States v. Chesney*, 86 F.3d 564, 572 (6th Cir. 1996) ("[t]he fact that Chesney possessed a gun

---

[4]        18 U.S.C. § 922(g).

that previously had moved in interstate commerce provides a sufficient nexus between Chesney's conduct and interstate commerce to allow Congress to regulate Chesney's conduct pursuant to the Commerce Clause."); *United States v. Lewis*, 100 F.3d 49, 52 (7th Cir. 1996).

Like the above-cited cases, the facts presented by the United States in the case at bar, taken as true, demonstrate that the bulletproof vest in question had been manufactured  in Jacksonville, Florida, offered for sale in interstate commerce, and purchased by an entity in the State of New Jersey.  Thus, the facts in the indictment and those presented by the parties demonstrate that the vest in question was sold or offered for sale in interstate or foreign commerce.  *See* 18 U.S.C. § 921(a)(35).  For these reasons, the Court declines to  hold that Section 931(a)(1), either on its face or as applied to Defendant, is unconstitutional.

### D. Scarborough

Even if the Court found that the jurisdictional element of Section 931(a)(1) did not lawfully place the statute within the commerce power, the application of Section 931(a)(1) to Defendant would still be allowed under the Supreme Court case of *Scarborough v. United States*.  *Scarborough*, 431 U.S. 563, 575 (1977).  In *Scarborough*, the Supreme Court stated that Congress could constitutionally regulate the possession of firearms solely because they had previously moved across state lines.  Although the extent of its reach and validity have been questioned by several circuits outside of the Eleventh Circuit, *Scarborough* is still good law.  *E.g., Patton*, 451 F.3d at 634-635.  In fact, the United States Court of Appeals for the Tenth Circuit has recently held that Section 931(a)(1) covers a subject properly  regulated by Congress under *Scarborough*.  *Id.* at 635 ("Because Mr. Patton's bulletproof vest moved across state lines at some point in its existence, Congress may regulate it under

*Scarborough*...").[5]

In the instant case, the facts presented, taken as true, demonstrate that the vest in question moved in interstate commerce.  Thus, under *Scarborough*, Congress may lawfully regulate the possession of such vest even if the jurisdictional element of the statute did not sufficiently demonstrate that the statute validly falls under the commerce power.

For these reasons, the Court will deny the motion to dismiss Count II of the Indictment.

### Conclusion

Based on the foregoing, the Motion to Dismiss Count Two of the Indictment, filed by Defendant Troy Nolan Harkness on February 23, 2007, (Doc. No. 23), is **DENIED**.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[5]     Interestingly, the Tenth Circuit in *Patton* opined that Section 931(a)(1) does not fall within any of the three categories recognized by the Court in *Lopez*, and further that the statute's jurisdictional hook does not, by itself, demonstrate that the activities regulated therein substantially affect interstate commerce.  While the Court agrees that a jurisdictional element is not always, in and of itself, enough to ward off a constitutional challenge, *E.g., United States v. Maxwell,* 446 U.S. 1210, 1217 (11th Cir. 2006), the Court in the instant case aligns itself with the reasoning of *Marler* and *Kitsch*, which agree that the jurisdictional element of 931(a)(1) , combined with Circuit precedents upholding the closely-analogous 18 U.S.C. § 922(g), are sufficient to survive a Commerce Clause challenge.

Copies furnished to:

Counsel of Record