**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

**vs.**                                  **Case No. 6:07-cr-0001-Orl-19KRS**

**TROY NOLAN HARKNESS,**

        **Defendant.**

_____

**ORDER**

This case was considered by the Court on the following:

1.      Defendant's Motion to Exclude Oral Statements, filed by Defendant Troy Nolan Harkness on March 9, 2007; (Doc. No. 36);

2.      Defendant's Motion to Exclude 404(b) Evidence, filed by Defendant on March 9, 2007; (Doc. No. 37);

3.      Defendant's Motion to Suppress Physical Evidence and Statements, filed by Defendant on March 9, 2007; (Doc. No. 38);

4.      Defendant's Motion in Limine, filed by Defendant on March 9, 2007; (Doc. No. 39);

5.      United States' Consolidated Response to Defendant's Motions to Suppress and Exclude Evidence, filed by Plaintiff United States of America on March 26, 2007; (Doc. No. 47); and

6.      Oral Motion to Exclude 404(b) Evidence.

An evidentiary hearing attended by counsel for all parties and the Defendantg was held by the Court on March 29, 2007.  (*See* Doc. No. 49, filed on March 29, 2007).

## FINDINGS OF FACT

The Court makes the following findings of fact after considering the evidence and observing the witnesses as they testified.

Defendant, Troy Nolan Harkness, was employed as a security guard for Home Suite Home, a hotel located on Colonial Drive and Primrose Street in Orlando, Florida.  A week or two prior to October 1, 2006, after Defendant had been observed walking about the property with a taser, Sergeant Arnold Alvarez of the Orlando Police Department had a report run on Defendant based on the license tag of his car and learned that Defendant was a convicted felon.  Sergeant Alvarez had this finding confirmed by the Department's Career Criminal Officer and then consulted with the legal department of his agency as to whether a convicted felon could carry a taser under Florida law.  Upon being advised that a convicted felon was in violation of the state law if he possessed and carried a taser, Sergeant Alvarez alerted his officers to notify him if they saw Defendant.

Around midnight on October 1, 2006, Officer Marlene Candeleria notified Alvarez that she had just seen Defendant at Home Suite Home.  After he finished his current task, Sergeant Alvarez met Officer Candeleria, and they drove in their separate marked police vehicles to the location of Home Suite Home.  Both officers were dressed in their police uniforms, and neither employed any emergency lights or sirens in their approach at normal speed to the property.[1]  When Sergeant Alvarez followed by Officer Candeleria arrived and

---

[1]        During this incident, no police officer unholstered a firearm.

stopped in the parking lot after accessing the property from its second entrance on Primrose Street, Defendant was standing by his vehicle about fifty (50) or so feet to the north. Unknown to the officers at that time, Defendant was wearing layers of clothing under his black shirt with "SECURITY" written in block letters on the back and two pairs of underpants and a jock strap under his cargo pants.

Defendant began walking toward the officers from his vehicle without being summoned by them and began to engage them in conversation. Defendant asked the officers: "What's going on?" The officers observed in plain view what appeared to be a gun and a taser hooked to Defendant's belt. Since he did not know Defendant, Sergeant Alvarez advised Defendant that he would like to disarm him. Defendant was cooperative and indicated his assent. Alvarez inquired, "What do you have there?", and Defendant stated it was a pellet gun.[2]

Alvarez then asked Defendant if he could get the taser from him, and Defendant answered in the affirmative. He gave Alvarez the taser which Alvarez later had tested to determine its functionality.[3]

Next Sergeant Alvarez inquired if Defendant had any more weapons on him. Defendant stated that he had a knife in his right front pocket, and he allowed Alvarez to take it.[4] The knife was on a clip which the Sergeant testified that he could see. It also had a flashlight attached to it.

---

[2]     The pellet gun looks like a semi-automatic firearm. Government's Exhibit 2.

[3]     Government's Exhibit 3.

[4]     Government's Exhibit 4.

Sergeant Alvarez then inquired of Defendant whether he had any other weapons on him.  Alvarez testified that this was for officer safety and that it is standard operating procedure to make this inquiry when the officer is "on the street".  Defendant responded in the negative to this question.

Finally, Sergeant Alvarez asked Defendant if he had a gun in his car.  Defendant responded that he did not.  Alvarez asked Defendant if he would allow his vehicle to be searched.  Both Officer Candeleria and Sergeant Alvarez testified that Defendant consented to this search.   Alvarez testified that Defendant responded in a normal tone of voice, "Yes, go right ahead."   During this time, Defendant was calm and courteous in demeanor. However, because Alvarez did not want to leave Officer Candeleria alone with Mr. Harkness, he decided to wait for another officer to arrive and did not search the vehicle immediately.[5]

Officer Randy D. Archer, who had heard over the radio Candeleria's notification to Sergeant Alvarez that she had seen Defendant, was the next officer to arrive.  At this point, Alvarez left Officers Archer and Candeleria with Defendant while he went to the rear of his police vehicle to look at the statute book to get the precise language for an arrest for being a felon in possession of a taser.

Shortly after Officer Archer arrived, Officer John S. James came to the scene and joined the two other officers and Defendant at the front of the Sergeant's police car. At the direction of Candeleria and Archer, James conducted a search of Defendant's vehicle before

---

[5]     The witnesses described Defendant as being about 5 feet, 10 inches tall, weighing around 230 to 250 pounds and having a muscular, stocky build.

Defendant was arrested.  James  found in the vehicle two knives and an asp, all with sheaths.[6]

While Sergeant Alvarez was doing his research, Defendant advised Officers Candeleria and Archer that he remembered that he had another weapon, a knife on a necklace around his neck.  Officer Candeleria testified that while she could see a chain at the back and sides of Defendant's neck, the knife was concealed beneath Defendant's clothing.[7] Officer Candeleria removed the chain and the concealed knife by opening the clasp of the chain at the back of Defendant's neck.  Following this and because she was concerned for her own safety that Defendant might have more concealed weapons, Officer Candeleria asked Defendant if he had any more weapons on his person.   Defendant responded that he had no other weapons.[8]

Officer Archer searched Defendant's person after the knife on the chain around his neck had been found, and no additional weapon was located.  He located a ring of keys in Defendant's pants pocket, one of which was for handcuffs.  When he asked Defendant where the other key was, as such keys come in sets, Defendant told Archer that his fiancé had it.

After Alvarez confirmed the statute under which the arrest was being made and confirmed through a test done by Officer James that the taser was in fact functional and not simulated, he determined to arrest Defendant.  Alvarez walked from the back of his police

---

[6]      Governments Exhibits 5, 6, and 7.

[7]      Government's Exhibit 8.

[8]      During this time while, Defendant asked, "What's going on?", and Alvarez responded, "I'll let you know in a minute."  He also asked Officer Candeleria, "What's happening?  What's going on?"  She responded that she did not really know.

vehicle to where the other officers and Defendant were standing, advised Defendant that he

was under arrest, and placed him in handcuffs. Defendant protested that he helped the police

all the time and that he had turned in a gun before.[9]

Before he was put in the patrol car, Officer Archer asked Defendant if he had any

more weapons.  Although Defendant indicated he did not, nonetheless Officer Candeleria

asked Officer James to search Defendant one more time before he was placed in her police

car for her safety.   James asked Defendant if he had any additional weapons before he

conducted the search.  No additional weapons were found.

Officer Candeleria got into her patrol car after Defendant had been placed in the

backseat by Officer Archer and began typing her charging affidavit on her computer.

Defendant's girlfriend arrived, and Defendant asked Archer if he could talk to her.[10] Officer

Archer let Defendant out of the car to talk with her.  They had whispered conversation, and

Officer Archer testified he could not hear what they were saying.  Defendant remained

handcuffed.  When Archer indicated that Defendant should get back into the police car,

Defendant advised that he wanted to give his girlfriend a package.  After Archer asked what

the package was, Defendant stated that he would tell Archer what it was, but indicated that

Alvarez was not to be told.  Defendant then told Officer Archer that he had a firearm in his

crotch.

---

[9]     Sergeant Alvarez denied that Defendant asked repeatedly why he was being
arrested and that Alvarez told Defendant, "You'll read about it" or "You'll find
out about it", or words to like effect.  Both Officer Candeleria and Sergeant
Alvarez denied that Alvarez pushed the statute book in Defendant's face.

[10]    There was evidence that Defendant had talked to his girlfriend on a cell phone
during this encounter.

Archer began banging on the ceiling of the patrol vehicle to get Officer Candeleria out of her car. He testified that knowing there was a deadly weapon concealed on Defendant changed the circumstances. Archer alerted Sergeant Alvarez, who had been researching whether the knife found concealed on a chain around Defendant's neck under his clothing was a prohibited weapon, that Defendant had a concealed firearm. Sergeant Alvarez asked Defendant where the firearm was. Upon being advised by Defendant that it was in his crotch in a jock strap, Alvarez told Defendant to stand still. As he started to undo Defendant's pants and belt, Defendant spontaneously said " Be careful. It has a hair trigger on it", and he sucked in his stomach to avoid being shot. Alvarez gingerly retrieved from Defendant's crotch area in a jock strap a loaded .380 caliber semi-automatic firearm with a bullet in the chamber and rounds in the magazine.[11]

During transport to booking, Officer Candeleria testified that Defendant talked the entire time, spontaneously and without being questioned. He stated variously that he had told them about the gun because he knew they would find it at the facility; that he had found the gun the day before and had not had time to turn it in; that he was trying to get his record cleaned up so he could be a police officer; and that he loved the police, had worked with them, and would not do anything to hurt the police.[12]

During the time of this encounter and transport, no officer advised Defendant of his Miranda rights.

---

[11]     Government's Exhibit 9.

[12]     Both Sergeant Alvarez and Officer Candeleria testified that at the time of this incident, they were unaware of any assistance Defendant had given to the police.

## CONCLUSIONS OF LAW

### A.  Motion to Exclude Oral Statements and 404(b) Evidence

Defendant moves to exclude his oral statements made to the police on the night of his arrest and 404(b) evidence about the Defendant's alleged prior handling of a firearm on timeliness grounds. (Doc. Nos. 36, 37).   Defendant argues, and the Government concedes, that Plaintiff's counsel mailed to Defendant on February 23, 2007, a list of oral statements made by the Defendant that it intends to present at trial and mailed to Defendant a list of 404(b) evidence it intended to use on March 8, 2007.  It is undisputed that the Court set a deadline of January 28, 2007, for the disclosure of such evidence between the parties. However, in the interests of justice and fairness, the Court will not exclude such evidence on timeliness grounds.

The United States was diligent in disclosing the oral statements and other evidence to Defendants as soon as they were received.  Defendant does not dispute that Plaintiff's counsel did not become aware of Harkness' statements until February 22, 2007, and sent notice of such statements one day later.  (*E.g.*, Doc. No. 36, p. 2).  Defendant accepts as true opposing counsel's statements that he forwarded such evidence within a day of receiving it. (*Id.*)  Furthermore, Defendant has failed to demonstrate any prejudice by such untimeliness. Finally, the Court notes that it has previously allowed Defendant to file untimely Motions in the instant case in the interest of justice.  (*E.g,*. Doc. No. 43, p. 5).  Thus, the Defendant's Motion to Exclude Oral Statements, (Doc. No. 36), and to Exclude 404(b) Evidence, (Doc. No. 37), is denied.

### B.  Motion to Suppress Physical Evidence and Statements

Defendant also moves to suppress any statements made by Defendant and any physical evidence taken on the night of Defendant's arrest on the grounds that Defendant was not read his *Miranda* rights despite being taken into custody, and thus that any information elicited from Defendant is inadmissible at trial due to the violation of his constitutional right to be free from self-incrimination. This argument is not well taken.

There is no dispute that Defendant was never read his constitutional rights under *Miranda* during his arrest. However, the weapons recovered by the police and Defendant Harkness' statements regarding the firearm in his possession are admissible under the "public safety" exception to *Miranda*.

In the case of *United States v. Newsome*, 475 F.3d 1221 (11th Cir. 2007), officers knew prior to arrest that the defendant was a previous violent offender and possibly in possession of a gun. *Id.* at 1223. After arresting the defendant and securing him with handcuffs, but before giving him *Miranda* warnings, an officer asked the defendant if there was anything in the room the officers should know about. *Id.* Defendant responded by telling the officers he had a gun and gave the location of the gun, which was not on his person but in the same room. *Id.* Under these facts, the Eleventh Circuit held that the public safety exception applied and affirmed the Defendant's conviction under 922(g). *Id.* at 1225.

Likewise, in *United States v. Smith*, No. 05-4378, 2006 WL 3798164 (7th Cir. Dec. 21, 2006), police knew prior to arrest that the defendant was a prior offender and received a tip that he was armed. *Id.* at *1. After subduing, arresting, and handcuffing the defendant in the hallway of the hotel in which he was staying, and after the officers had already done a protective sweep, the officers asked the defendant where he kept his gun. *Id.* The

defendant replied, before being given *Miranda* warnings, that he kept the gun in a footlocker back in his hotel room. *Id.* The Seventh Circuit reasoned, in affirming defendant's conviction under 922(g), that "[r]easonably believing that Smith had a concealed gun but having not yet seen it, the officers properly invoked the public safety exception [...]. " *Id.* at *2; *see also United States v. Thurston*, 774 F.Supp. 666 (D. Me. 1991).

In the instant case, Defendant was calm and cooperative during his arrest, and his statements to the police regarding the weapons and handgun not found by the police during their initial pat down of the Defendant were made without coercion. Furthermore, as the police discovered that Defendant had more weapons on his person than those he initially disclosed to them during the initial moments of the encounter, the arresting officers were well within the law to ask limited questions and conduct a limited search incident to the safety of themselves and of the public. *E.g., New York v. Quarles*, 467 U.S. 649, 655-58 (1984). For these reasons, Defendant's Motion to Suppress Physical Evidence and Statements, (Doc. No. 38), is denied.

### C. Motion in Limine

Defendant moves the Court to prohibit the United States from introducing at trial the weapons found in the Defendant's possession which he was legally permitted to possess, namely, the knives, the asp baton, and the handcuff keys. (Doc. No. 39, p. 2). Defendant argues that such evidence is irrelevant, or in the alternative, that its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues and the misleading of the jury under Federal Rule of Evidence 403.

The Court finds that the evidence in question is admissible in the instant case. Under

Federal Rule of Evidence 404(b), such evidence is admissible to show proof of motive, intent, preparation, plan, or absence of mistake or accident on the part of Defendant Harkness. Fed. R. Evid. 404(b). Furthermore, the United States may wish to introduce this evidence to demonstrate the discrepancy between the weapons that Defendant initially told the officers he possessed and the weapons found later. Thus, such evidence is relevant under Rule 401. The probative value of such evidence is not outweighed by the danger of prejudice, confusion, or the misleading of the jury under Rule 403. For these reasons, the Defendant's Motion in Limine, (Doc. No. 39), is denied.

### D.  Oral Motion to Exclude 404(b) Evidence

On March 26, 2007, the United States filed a Second Notice of Intent to Introduce Evidence Pursuant to Rule 404(b). (Doc. No. 48). In it, the United States disclosed that it wished to present evidence of the Defendant's alleged possession of handguns prior to his arrest in October of 2006 but subsequent to his earlier felony convictions. During the hearing, defense counsel orally objected to the introduction of such evidence on timeliness and substantive grounds.

The Court denies Defendant's timeliness objection for the reasons previously stated at the hearing and in this Order, namely, that in the interests of justice, fairness, and reciprocity, such evidence should be admitted. Furthermore, evidence of prior incidents of gun possession are admissible where the defendant claims innocent possession of a firearm to show plan or absence of mistake. *See* Fed. R. Evid. 404(b); *United States v. Williams,* 177 Fed.Appx. 914, 923-24 (11th Cir. 2006); *United States v. Jernigan*, 341 F.3d 1273, 1281-82 (11th Cir. 2003). For these reasons, the Defendant's Motion is denied.

**Conclusion**

Based on the foregoing, the Defendant's Motion to Exclude Oral Statements, (Doc. No. 36), Motion to Exclude 404(b) Evidence, (Doc. No. 37), Motion to Suppress Physical Evidence and Statements, (Doc. No. 38), Motion in Limine, (Doc. No. 39), and Oral Motion to Exclude 404(b) Evidence, are **DENIED**.

**DONE and ORDERED** in Chambers in Orlando, Florida this 30th day of March, 2007.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record

-12-